## THE VIOLET, etc.

District Court, E. D. Virginia, at Norfolk.

Jan. 14, 1932.

H. H. Rumble, Asst. U. S. Atty., of Norfolk, Va., for libelant.

Kelsey & Jett, of Norfolk, Va., for respondent.

WAY, District Judge.

The gas screw Violet on October 31, 1930, was licensed to carry on the coasting trade with her home port at Baltimore, Md. In the early morning of January 12, 1931, the Violet was discovered by Coast Guard Patrol Boat CG-221 in Chesapeake Bay running without lights. She was immediately hailed by the Coast Guard but refused to stop. There ensued an exciting chase during which the Coast Guard sprayed the Violet with one-pound shots, machine gun and rifle bullets, until she was finally run aground about two miles off Old Plantation Light.

The Violet had on board bags or cases containing about 12,500 quarts of intoxicating liquor, *her only cargo,* which she had short-ly before smuggled through the Capes into the United States, after having contacted a foreign ship or vessel on the Atlantic Ocean off the shore of the United States.

The vessel was seized by the Coast Guard and taken to Norfolk, where, with her cargo, she was delivered into the custody of the collector of customs, Fourteenth collection district, pending her disposition pursuant to valid legal proceedings.

Shortly after her seizure these proceedings for condemnation and forfeiture of the Violet for violation of the Tariff Act of 1930, §§ 585, 586, and 587 (19 USCA §§ 1585–1587), and trading outside of her license in violation of section 4377 of the Revised Statutes (46 USCA § 325), were instituted in this court.

At the time the Violet was seized, Asa Ketchum, going under the alias "John C. Karey," was the master in charge of the Violet; John Rogers, now a fugitive from justice, the engineer; and Charles Ketchum, then going under the alias "Jim Gray," deck hand. Charles Ketchum, alias "Gray," is a son of said Asa Ketchum, alias "Karey."

All three members of the crew were arrested, bailed by a commissioner, and upon the convening of the next term of this court (May 4, 1931) were indicted for the transportation of intoxicating liquors in violation of the National Prohibition Act. Asa Ketchum, alias "Karey," the master of the vessel, was also indicted for smuggling in violation of the Tariff Act. Charles Ketchum, alias "Gray," the deck hand, pleaded not guilty, was tried and convicted for violation of the National Prohibition Act, and sentenced to the penitentiary. Defendant Ketchum, alias "Karey," the master, pleaded guilty both to the indictment for violation of the National Prohibition Act and to the indictment charging him with smuggling. He was sentenced on each indictment to serve a term in the federal penitentiary, but the sentence for violation of the Tariff Act was suspended for three years on condition of good behavior. Rogers, the engineer, after being bailed by a United States commissioner for his appearance to answer the charge of violating the Prohibition Act, skipped and is still a fugitive from justice. His bail bond in the penalty of $7,500 was forfeited to the United States.

Some time after the institution of these proceedings, one Foster Hamilton, asserting a maritime lien against the Violet for necessary supplies alleged to have been furnished her in November, 1930, upon his motion was allowed to file his intervening libel and pe-

tition in these proceedings and later to file exceptions to the government's libel. These exceptions raise the following question: The Violet having been discovered and seized in the act of illegally transporting intoxicating liquor within the territorial limits of the United States, and the United States having prosecuted the crew of the Violet for violation of the National Prohibition Act, must proceedings for condemnation and forfeiture of the Violet be under section 26 of the National Prohibition Act, or may the United States nevertheless prosecute to a conclusion forfeiture proceedings for smuggling and trading outside the Violet's license?

Counsel for the government contends that under the facts of this case the government is entitled to have the vessel condemned and forfeited for violation of the Tariff Act and for trading outside her license, notwithstanding the arrest and prosecution of the crew for violation of the National Prohibition Act. On the other hand, the intervenor contends that the provisions of section 26 of title 2 of that act (27 USCA § 40) are mandatory under the facts of this case and that forfeiture must be had thereunder.

Under the provisions of the National Prohibition Act, innocent lienors and claimants against the vessel are protected while under the Tariff Act, and under section 4377 of the Revised Statutes the innocence and bona fides of the lienor or claimant constitute no defense and the forfeiture is absolute.

Many decisions of the federal courts have been presented to the court in support of the respective contentions of counsel. The question is not without much difficulty, since in the instant case the master of the vessel was prosecuted to a successful conclusion both for violations of the National Prohibition Act and of the Tariff Act. I do not consider the fact that the master's sentence for smuggling was suspended material to a decision of the case. The additional prosecution of the master for violation of the Tariff Act was to all intents and purposes as complete and successful as the prosecution for violation of the National Prohibition Act, as to him.

Counsel for the government relies strongly upon the decision of our Circuit Court of Appeals in the Pilot Case (September, 1930), reported in 43 F.(2d) 491, 492. However, the facts in the Pilot Case differ so materially from those in this case that I am unable to agree with counsel that it is necessarily decisive of this case. The facts in the Pilot Case are clearly stated in the opinion by Circuit Judge Northcott, as follows:

"While said boat was being used in the fishing business the captain became sick and was taken to his home. After the captain left the boat, lessee and the crew, without the knowledge, consent, or privity of the captain or owner, removed said boat from her landing place, and on the 21st day of May, 1928, she was seized by coast guard officials about two miles from the shore near Bear Inlet, N. C., with about seven hundred cases of intoxicating liquor on board. The liquor was loaded on the Pilot from an unnamed boat lying off shore out in the Atlantic Ocean, some three miles off the coast of the United States. At the time of the seizure of the Pilot, she was headed in the direction of Beaufort, N. C., and it is admitted that the purpose of those in charge was to smuggle the cargo of liquor on board into the United States.

"The boat was towed to Beaufort, N. C., and later to Wilmington, N. C., and turned over to the customs officials and the cargo unloaded at that place, the lessee, George Lazo, alias Joseph Lascara, and crew, Herman Roeberg, alias H. Berg, Wm. H. Kline, alias Wm. Hanson, John A. Ohman, alias J. A. Olsen, were arrested. All of these men were indicted at October term, 1928, United States District Court, Wilmington Division, for smuggling intoxicating liquor, under section 593 (a) (b), Tariff Act 1922 (19 USCA §§ 496, 497), and at said court the defendants Lazo and Olsen were convicted, and the court entered the following judgment: 'That each defendant pay fine of fifty dollars and be imprisoned in the Atlanta Penitentiary for a term of one year and a day,' and said defendants are now serving said term of imprisonment. The defendants Kline and Roeberg failed to appear, though how they came to be at large the record does not show. Roeberg appeared June, 1929, special term of said court, New Bern Division, and pleaded guilty. J. K. Gilliken and W. H. Davis, sureties on bond given by lessee Lascara to owner of Pilot, who were also indicted as conspirators, were tried and acquitted."

It will be noted that the facts in the Pilot Case differ from those in the instant case in this important particular: The Pilot and her cargo of liquors were seized by the Coast Guard, *turned over to and held by the customs authorities,* and the prosecution of the crew of the Pilot was for violation of the Tariff Act and trading outside her license only; that is to say, the government elected not to prosecute the crew under the National Prohibition Act.

Here the Violet and her cargo having been seized in the inland waters of the United States, all the members of the crew, including the master, were prosecuted under the National Prohibition Act, although the master was prosecuted for violation of the Tariff Act also.

The recent case of U. S. v. Motor Boat K-1231 (2d C. C. A., December 14, 1931) 54 F.(2d) 502, also has been cited by the government. The pertinent facts in that case were as follows:

A Coast Guard cutter while cruising off Jones Inlet, Long Island, sighted motorboat K-1231 coming in from the open sea and immediately gave chase. Those in charge of the K-1231 ran her ashore, abandoned the vessel, and escaped without any of them being identified, so that there was no arrest and no prosecution under any law. The evidence of the violation of the Tariff Act as well as of section 4377 was unmistakable. The government having instituted proceedings to forfeit the motorboat upon those grounds, a claimant intervened and alleged that he was the innocent owner of the motorboat *contending that the government was compelled to forfeit the vessel under section 26 of title 2 of the National Prohibition Act.* The Court of Appeals affirmed the District Court and held the government was entitled to have the vessel forfeited under the Tariff Act and for violation of section 4377. The Court of Appeals also held in the K-1231 Case that there was no conflict between the Willis-Campbell Act (42 Stat. 222) and section 4377 of the Revised Statutes or between the Willis-Campbell Act and the provisions of the Tariff Act, saying: "Moreover, section 4377 of the Revised Statutes, which imposes a forfeiture where a vessel engages in a trade for which she is not licensed, and Sections 593 (a) and (b) and 594 of the Tariff Act which provide forfeiture for smuggling cover a different field from that of the illegal transportation of liquor. They are a settled and vital part of our general navigation and customs laws and do not conflict with Section 26 of the Prohibition Act aimed merely at forfeiture for illegal transportation of liquor. They are much further from it than section 3450 of the Revised Statutes [26 USCA §§ 1181, 1182] which was involved in the Richbourg decision, where the use of the vessel was in the removal of taxable goods. Such removal was equivalent to transportation for which forfeiture is provided by section 26."

In concluding the opinion in the K-1231 Case the court used this rather significant language: "We are not persuaded that such an interpretation of section 5 of the Willis-Campbell Act is intended, *at least where prosecution under section 26 is wholly impracticable,* and it seems to us not in accordance with its terms." (Italics supplied.)

United States v. Blackwood (C. C. A. 1st) 47 F.(2d) 849, also upholds the right of the government to condemn and forfeit a vessel for violation of the Tariff Act where the goods smuggled in are intoxicating liquors. However, it appears from the statement of the facts in the opinion that the vessel in that case, the Evelyn Ruth, was followed by a Coast Guard boat from the high seas into the harbor of Provincetown, Mass., and there, being signaled by the Coast Guard boat, the Evelyn Ruth, was docked, after which the crew hastily abandoned her and disappeared without any of them being arrested or even identified. The Coast Guard boat seized the Evelyn Ruth and delivered her to the collector of customs, at Boston, where she was libeled for violation of the provisions of the Tariff Act. It appears that the Evelyn Ruth had smuggled intoxicating liquors into the port of Boston a short time prior to her seizure at Provincetown. The proof of smuggling was clear. There was no attempt to prosecute any member of the crew either for smuggling or for violation of the National Prohibition Act due to the fact, no doubt, the Coast Guard was unable to identify any of the crew. It also appears from the opinion that at the hearing "the claimant offered no evidence."

In Richbourg Motor Company v. United States, 281 U. S. 528, 50 S. Ct. 385, 74 L. Ed. 1016, 73 A. L. R. 1081, the Supreme Court, in analyzing and construing section 26 of title 2 of the National Prohibition Act, said:

"The language of § 26 [27 USCA § 40] is in form *mandatory throughout.* It is made the 'duty' of the officer discovering any person in the act of transporting liquor to seize the liquor, when 'he shall take possession of the vehicle' and 'shall arrest any person in charge' of it. He '*shall at once proceed against the person arrested under the provisions of this title.*' The vehicle 'shall be returned to the owner' upon his giving bond. The court upon conviction of the person so arrested * * * shall order a sale by public auction of the property seized' and the officer making the sale 'shall pay all liens which are established * * * as being bona fide and as having been created without the lienor having any notice that the

carrying vehicle was being used or was to be used for illegal transportation of liquor. * * *' It is plain that, whenever the vehicle seized by the arresting officers is discovered in use in the prohibited transportation, literal compliance with these requirements would compel the forfeiture under § 26, with the consequent protection of the interests of innocent lienors. To that extent, § 26, if interpreted to exact such compliance, is in direct conflict with the forfeiture provisions of § 3450 and supersedes them whenever any person within the provisions of § 26 is discovered 'in the act of transporting * * * intoxicating liquors in any * * * vehicle,' which liquor is 'removed * * * deposited or concealed * * * with intent to defraud the United States' of the tax." 281 U. S. 532, 533, 50 S. Ct. 385, 74 L. Ed. 1016, 73 A. L. R. 1081. (Italics supplied.)

"We think that Congress did not take the precaution to enact the carefully chosen language of § 26 merely to impose general duties on prosecuting officers already placed on them by other sections of the Act, but that *its purpose was to preclude the nullification of the protection which § 26 had extended to innocent third persons.*" 281 U. S. 535, 50 S. Ct. 385, 74 L. Ed. 1016, 73 A. L. R. 1081. (Italics supplied.)

"We are of opinion that under § 26 [27 USCA § 40] it is the duty of prohibition officers to arrest any person *discovered in the act of transportation* and to seize the transporting vehicle; that such arrest and seizure require the government to proceed for forfeiture of the vehicle under § 26. *It is unnecessary to say whether, if for any reason the seizure cannot be made or the forfeiture proceeded with*, prosecution for any offense committed must be had under the National Prohibition Act rather than other statutory provisions." 281 U. S. 536, 50 S. Ct. 385, 388, 74 L. Ed. 1016, 73 A. L. R. 1081. (Italics supplied.)

I think it is manifest that in the Blackwood Case and the K-1231 Case the seizure could not be made or the forfeiture proceeded with under the provisions of section 26 of title 2 of the National Prohibition Act.

In the Pilot Case, while the government could probably have successfully prosecuted the crew under the Prohibition Act for illegally transporting intoxicating liquors within the territorial limits of the United States, it clearly appears from the opinion of the court that the Coast Guard proceeded promptly to *turn over the Pilot and her cargo to the customs authorities* and that the government prosecuted under the Tariff Act only.

In this case there was no reason why seizure could not be made and the prosecution had under the National Prohibition Act. Two of the crew were prosecuted under the National Prohibition Act only, and the master of the vessel was prosecuted under both acts. Certainly the government elected to avail itself of the advantage of prosecuting under the Prohibition Act rather than relying on prosecution for smuggling alone. Having availed itself of that advantage, there appears to be no all-sufficient reason why it should be relieved of the burdens attending a prosecution under the act. Had the government prosecuted for smuggling alone, as was done in the case of the Pilot, its position would be impregnable; or, had all the crew of the Violet escaped without identification or arrest so that prosecution under section 26 was *"wholly impracticable,"* I think the principle laid down in the Blackwood and the K-1231 Cases would be controlling; but, as already pointed out, no such situation exists here. This distinction is clearly brought out in the opinion of the Court of Appeals for the Second Circuit in the case of The Motorboat K-1231 (December 14, 1931), supra, where it is said: "Section 26 provides that, upon discovery of a person in the act of transporting liquor and the seizure of the vehicle or boat, such person shall be arrested, and, upon his conviction, the court shall order the liquor destroyed, and, 'unless good cause to the contrary is shown by the owner,' shall order a sale of the vehicle or boat and payment from the proceeds of liens created without notice of the illegal use. It is evident that forfeiture under section 26 can only be had when there is a conviction of the person discovered in the act of illegal transporting. *Here the crew of K-1231 ran away and could not be arrested.* If the government cannot proceed under the navigation and customs laws, it is wholly defied and loses its right to forfeit the motorboat, in spite of the fact that the owner is a party to this proceeding and has not shown that he was ignorant of the illegal trade in which his vessel was engaged, though he would have had to show this in order to escape forfeiture under section 26." (Italics supplied.)

In another recent case, Commercial Credit Co. v. U. S. (C. C. A. 5th, Dec. 2, 1931) 53 F.(2d) 977, these distinctions are discussed at length. The pertinent facts in that case are stated in the opinion of the court, as follows:

"Taking as typical the first case in the record, the facts found are that on October 29, 1930, a customs inspector seized the automobile and arrested the driver in Brooks county, Tex., while transporting eighteen five-gallon cans of alcohol, and seventeen quarts of whisky which had been bought in Mexico and smuggled by the seller across the Rio Grande into Texas, and loaded in Texas on the automobile and thence transported to the place of seizure.

"The merchandise was not declared, and a tax was due on it but not paid, and no revenue stamps appeared on the packages. The seizing officer, though a customs inspector, was engaged wholly in seizing contraband liquors and the carrying vehicles; his headquarters being at Falfurrias, Tex., about seventy miles from the border."

On those facts the Circuit Court of Appeals for the Fifth Circuit held that the government must proceed to condemn and forfeit pursuant to the provisions of section 26 of title 2 of the National Prohibition Act. The court said:

"If no person can be arrested; or if the transportation by reason of proper permits be lawful under the prohibition law and unlawful only because of fraud on the revenue, so that there could be no prosecution under the prohibition law; or if the person arrested be an ignorant and therefore innocent dupe of a guilty owner and be acquitted for that reason, grave question may exist of the exclusive application of 27 U. S. C., 40 (27 USCA § 40).

"So there might be such question if the vehicles here involved had contained substantial quantities of contraband merchandise other than intoxicating liquor on account of which forfeiture was sought. And it has been held that a vessel or vehicle used in the act of unlawful importation of intoxicating liquors might be forfeited under the customs and shipping laws; the subsequent unlawful transportation within the United States not superseding or annulling the offense and the forfeiture completed at the border. United States v. One Nash Auto (D. C.) 23 F.(2d) 126; The Pilot (C. C. A.) 43 F.(2d) 491.

"But none of these considerations arise here. The vehicles involved were used only in transportation within the United States, and carried intoxicating liquors alone, and the persons in charge were arrested, and, for aught that appears, are guilty under the prohibition laws. No reason exists why the mandate of 27 U. S. C. § 40 (27 USCA § 40) should not be followed out by the officers of

the United States in their efforts to condemn the vehicles. The judgment is accordingly reversed, with direction to dismiss the libels without prejudice."

In this case the master and crew of the Violet were "discovered" by the Coast Guard, chased, and caught red-handed in the inland waters of the United States "transporting in violation of the law, intoxicating liquors," and nothing else. The liquors and the "craft" were seized. The members of the crew were arrested, proceeded against under the National Prohibition Act by indictment, and two of them convicted and sentenced under that act, while the third forfeited his bond and is a fugitive from justice for violation of that act alone.

It, therefore, seems to the court that it would be contrary to the spirit of the interpretation placed upon section 26 by the Supreme Court in the Richbourg Case, and at the same time clearly going beyond the bounds of the decision of our Circuit Court of Appeals in the Pilot Case, to hold that, under the circumstances of this case, the government may disregard the plain mandatory provisions of section 26, and, as against the claimant, an alleged innocent lienor, have an absolute forfeiture of the Violet.

My conclusion is that the acts of the government authorities above enumerated amounted to an election to proceed under the National Prohibition act against the crew of the Violet; that condemnation and forfeiture must, therefore, be under section 26 of title 2 of that act; and that the libel should be dismissed, but without prejudice to the right to condemn and forfeit as above stated.